**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **5:06-CR-121 (WDO)** |
| **HASSAN HARCLERODE,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

Defendant Harclerode has been indicted on eight counts of drug and drug-related charges that arose out of an incident on March 23, 2006 where Bibb County deputies were executing a search warrant during which Deputy Whitehead was shot and killed. During the search of the residence officers found more than 5 grams of "crack"cocaine and more than 40 grams of marijuana. In one bag the officers found 27 pieces of "crack" cocaine. In another bag there were 261 pieces of "crack" cocaine. The marijuana was packaged in 41 individual bags. Two weapons, which were fired in the shooting death of Deputy Whitehead, were also seized from the residence. The government contends that the investigation of the residence revealed that it served as a distribution site for marijuana and "crack" cocaine. The investigation also revealed that Defendant Hassan Harclerode allegedly rented, maintained and controlled the premises and allegedly supplied all the drugs distributed from this residence by his co-defendants. Defendant Harclerode also allegedly personally sold "crack" cocaine and marijuana from the residence. The investigation revealed there were two other residences allegedly used, maintained and controlled by Defendant Harclerode, Oglesby

1

Place and Berkner Avenue, that were allegedly used and maintained for the purpose of distributing "crack" cocaine and marijuana. If convicted of the crimes charged in this case, Defendant faces a maximum sentence of life in prison plus 60 months.

Based on the foregoing, the Magistrate Judge held a hearing to determine whether Defendant Harclerode should be detained pending trial. At the conclusion of the hearing, the Magistrate Judge ordered a secured bond in the amount of $75,000, finding that the government failed to establish the Defendant poses a "risk of flight" and/or a "danger to the community." The government thereafter filed a motion seeking a revocation of the release order arguing that based a totality of the circumstances Defendant poses both a flight risk and a danger to the community.

In U.S. v. Hurtado, the Eleventh Circuit Court of Appeals for the first time interpreted the Bail Reform Act that provides the guidelines for deciding the issues presented in this case. United States v. Hurtado, 779 F.2d 1467 (11th Cir. 1985). The court first set forth the initial issue to be addressed in these cases:

> [W]hen defendants are accused of violation of certain drug laws, subject to rebuttal by the person accused it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

Id. at 1470 n.2 (citing 18 U.S.C. § 3142(e)). Courts are to take the following factors into consideration when making these determinations: "(1) the nature of the crime as involving a narcotic drug; (2) the weight of the evidence against each defendant; (3) the defendant's

2

background in terms of familial, financial, and residential ties to the community, and past history of involvement with drug and other crimes; and (4) the danger to others in the community if the defendant were released prior to trial." Id. at n.3 (citing 18 U.S.C. § 3142(g)).  Courts are also to consider detaining a defendant pending trial in:

1.    Cases involving crimes of violence;

2.    Cases involving a maximum sentence of life imprisonment or death;

3.    Cases involving serious drug offenses (those involving maximum sentences of ten years or more);

4.    Cases involving recidivist offenders (those with two or more relevant felonies);

5.    Cases involving a serious risk of flight; or

6.    Cases involving a serious risk that a defendant will obstruct justice.

United States v. Giordano, 370 F.Supp.2d 1256, 1260 (S.D. Fla. 2005) (citing United States v. Salerno, 481 U.S. 739, 747, 107 S. Ct. 2095) (other citations omitted)).

"Section 3142(e) provides that the presumption of flight arises 'if the judicial officer finds that there is probable cause to believe that the person committed an offense' . . . carrying potential punishment of ten or more years in prison." Hurtado, 779 F.2d at 1477. "[T]he return of a true bill by a grand jury, resulting in indictment, conclusively demonstrates that probable cause exists implicating a citizen in a crime." Id. (citation omitted).  "Once the government makes a showing of probable cause that the defendant committed one of the enumerated acts this triggers the presumption that the defendant either constitutes a danger

3

to the community or poses a risk of flight from justice.  At that point, it becomes the task of the defendant to come forward with evidence to meet his burden of production - that is, evidence to suggest that he is either not dangerous or not likely to flee if turned loose on bail."  Id. at 1479 (citing 18 U.S.C. § 3142(e)).  Finally, a bail hearing should be held promptly, that is, in no event should it take place more than five days after the first appearance except for "good cause."  Id.  The government may request a 3-day extension to prepare.  The defendant may request up to five days to secure counsel and prepare a defense.  Or, if "good cause" is shown, "these time constraints may be relaxed."  Id. at 1474.

Several years after Hurtado the court of appeals again had the opportunity to address more specific questions raised pursuant to the Bail Reform Act in United States v. King, 849 F.2d 485 (11th Cir. 1988).  The court first explained how lower courts should determine if a defendant is a "danger to the community" by quoting the following portions from the legislative history:

> The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.'  The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.  The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.  This principle was recently endorsed in United States v. Provenzano and Andretta, 605 F.2d 85 (3rd Cir.1979), in which it was held that the concept of 'danger' as used in current 18 U.S.C. 3148 extended to non-physical harms such as corrupting a union.  The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'

Id. at 487 n.2.  "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."  Id. at 487 (citing 18 U.S.C. § 3142(e)).  Taking these factors into consideration, the court found that detention was appropriate when the defendant was charged with narcotics offenses punishable by more than 10 years in prison, that she had been the leader of a high volume and extremely profitable cocaine distribution scheme that operated in several southeastern States and that the government's evidence showed the defendant directed several drug couriers who participated in the drug scheme.  Id. at 488.  The court held that based on these factors no condition of release would reasonably secure the safety of the community.  Id.  Further, the defendant's substantial drug connections outside the United States, the fact that her home was in forfeiture and the presumption that the defendant had the funds to finance flight were more than adequate to support pretrial detention as necessary to assure the defendant's presence at trial.  King, 840 F.2d at 489.  But see United States v. Giordano, 370 F. Supp.2d 1256 (S.D. Fla. 2005) (defendant charged with 35 counts of mail and wire fraud and facing 8 to 10 possible years in prison granted $1 million bail based on lack of criminal history and lack of significant ties abroad).

In King, the court also addressed whether district courts must provide a separate, written order when reviewing a Magistrate Judge's order of detention or release and the

standard of review to be given to the detention/release decision.  The court of appeals instructed district courts to conduct a de novo review of the detention order and exercise "'independent consideration' of all facts properly before it."  <u>Id.</u> at 490.  Further, "[w]hile the district court is always free to enter its own findings in writing and a written statement of reasons supporting pretrial detention, we hold that this is necessary only where: (1) the district court considers evidence which was not considered by the magistrate; or (2) the district court adopts the magistrate's recommendation that pretrial detention is necessary but finds that certain of the magistrate's underlying conclusions or factual findings are incorrect or unsupported by the evidence."  <u>King</u>, 849 F.2d at 491.  Because this Court invited the parties to submit any additional evidence they felt necessary and, after reviewing the decision below and the parties' briefs on the issues addressed herein, the Court found that additional legal and factual findings were necessary, a separate, written order is appropriate.

Applying the aforementioned factors from the case law and statutes to the facts of this case, the Court finds that Defendant Harclerode should be detained pending trial with no bail set.  A review of the facts the government intends to present at trial, the affidavit from the investigative agents and the report from the Probation Office shows the government met its burden of establishing Defendant's dangerousness to the community and his risk of flight. Defendant failed to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance or the safety of the community considering the following factors.  The crimes charged involve narcotics.  This case involves a maximum sentence of life imprisonment.  This is a case involving a recidivist offender:

6

- In 1994 Defendant was charged with possession of marijuana, although the charge was nolle prossed.

- In 1994 Defendant received 12 months probation and a $150 fine for obstruction of an officer.

- In 1994 Defendant was again charged with obstruction and received the same sentence.

- In 1996 Defendant received 6 years probation and two $400 fines for marijuana and firearm charges.

- In 1996 Defendant was charged with theft by taking, although the status of that charge is unknown.

- In 1996 Defendant was charged with possession of a counterfeit substance, possession of a firearm during the commission of a crime, possession of a firearm by a felon, fleeing or attempting to elude an officer, driving without a license and reckless driving.  For this charge, Defendant was sentenced to 120 days in boot camp.  A petition to revoke the probation was filed for Defendant's failure to report, failure to abide by curfew and failure to pay his fines.  He was returned to probation and fined $480.  This probation was later revoked for failure to abide by curfew, failure to report, failure to perform community service and failure to pay his fine.  Defendant returned to jail to complete the remainder of the sentence.

- In 1999 Defendant was charged with obstruction of an officer, received a 3-

7

year sentence of confinement and served one year in jail.

- In 2005 Defendant was charged with possession with the intent to distribute marijuana and aggravated assault, although those charges were dismissed.

- In March of 2006, Defendant was charged in the Superior Court of Bibb County for the incidents surrounding the alleged murder of Deputy Whitehead and later charged with drug and drug-related charges in this Court, for which he faces a maximum of life imprisonment.

There is a clear danger to the community in that if Defendant is released prior to trial he will very likely continue selling drugs in the manner in which he appears to have been doing for years. The report from the Probation Officer indicates Defendant is involved in the "Kitchen Pride" gang, although Defendant argues "Kitchen Pride" is merely the name of his neighborhood. Defendant does not appear to own any property but rents three residences, one of which was the location where Deputy Whitehead was killed. Prior to his arrest, Defendant was employed as a carpenter making $7.25 an hour and states that he would be able to return to that job if released. However, a $7.25 per hour job alone does not provide the means necessary to keep 2 or 3 residences and provide support for 2 children. Although Defendant is 29 years old, has lived in the Macon area since he was 8 years old and has 2 children, considering Defendant's prior charges and convictions, this case involves an overwhelmingly serious risk of flight based on Defendant's presumed ability to access cash to flee and, importantly, his two failures to appear in the state court system. Defendant failed to rebut the presumption that no condition or combination of conditions will reasonably

8

assure his appearance at trial or that he is a danger to the community.  Based on the foregoing, the Magistrate Judge's order of release is reversed.  Defendant shall be detained pending trial or some other resolution of the charges against him.

**SO ORDERED this 14th day of November, 2006.**

**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**